(C. D. 392)

STANDARD OIL CO. OF NEW JERSEY *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 4, 1940)

*Sharretts & Hillis* (*Edward P. Sharretts* and *Arthur L. Tallman* of counsel) for the plaintiff.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard F. Weeks* and *Marcus Higginbotham, Jr.,* special attorneys), for the defendant.

Before BROWN and WALKER, Judges

WALKER, Judge: In 1937 the famous steamship *Leviathan* was sold by her American owners to British interests whose intent was to sail her to Scotland and there reduce her to scrap. On January 21 and 22, 1938, the plaintiff withdrew from bonded warehouse 1,640,944 gallons of fuel oil which had previously been imported from Aruba, Netherlands West Indies. The oil so withdrawn was supplied to the *Leviathan* for the purpose of conversion into power aboard her to propel her on the voyage from New York to Rosyth, Scotland, where she was to be broken up. It has been stipulated by the parties in this action that such oil was actually used as fuel on the *Leviathan's* voyage to Rosyth, and that the voyage was made under English registry and in ballast without cargo or passengers.

On February 18, 1938, the collector of customs at the port of New York liquidated the entry covering the said oil and classified it as fuel oil, free of duty under the provisions of paragraph 1733 of the Tariff Act of 1930, but assessed tax or duty thereon at the rate of ½ cent per gallon under the provision in section 601(c) (4) of the Revenue Act of 1932 for "fuel oil derived from petroleum."

Plaintiff thereupon filed this suit against the United States claiming exemption from the latter tax or duty under section 630 of the Revenue Act of 1932, as amended, which provides, so far as pertinent, as follows:

SEC. 630. EXEMPTION FROM TAX OF CERTAIN SUPPLIES FOR VESSELS.

Under regulations prescribed by the Commissioner, with the approval of the Secretary, no tax under this title shall be imposed upon any article sold for use as fuel supplies * * * on vessels * * * actually engaged in foreign trade * * *.

If the plaintiff's contention is to prevail it must be decidedly and affirmatively shown that the *Leviathan* was, at the time of her voyage to Rosyth, actually engaged in foreign trade, and it therefore becomes necessary to determine what constitutes "trade" and, more specifically, "foreign trade."

Webster's New International Dictionary, Second Edition, defines "trade" as—

The act or business of exchanging commodities by barter, or by buying and selling for money; commerce; traffic; as, international *trade* * * *.

and Funk & Wagnalls New Standard Dictionary defines it as—

Buying and selling, for gain or as a means of livlihood; mercantile traffic; commerce; hence, any individual bargain; as, to engage in foreign *trade.*

and defines "foreign trade" as—

The commercial interchange of commodities from different countries; export and import trade.

We are satisfied that the latter definition represents the common meaning of the term in ordinary usage in the United States. See *United States* v. *Patten*, Fed. Cas. 16007. That definition as applied to vessels "actually engaged in foreign trade" imports the carriage of merchandise or passengers, so that the vessel becomes the vehicle of foreign trade. It is not disputed that the *Leviathan* was not carrying either merchandise or passengers, and while on her final voyage was not engaged in any transaction of a commercial character.

Counsel for the plaintiff have advanced the argument that the navigation of the *Leviathan* from New York to Rosyth was *per se* "foreign trade" on the ground that navigation is a branch of trade, citing in support of this *Gibbons* v. *Ogden*, 9 Wheat. 1. We are definitely certain that the mere navigation of the vessel from New York

to her foreign destination did not bring it within section 630, *supra*, as a vessel actually engaged in foreign trade, and nowhere in the language of Chief Justice Marshall in *Gibbons* v. *Ogden* does it appear to have been held that the simple navigation of a vessel to a foreign port constituted an engagement in foreign trade.

A glance at the common meaning of the term "navigation" as set forth by the lexicographers above mentioned is sufficient to demonstrate that navigation alone of a vessel to a foreign port is not an engagement in foreign trade within the common meaning of the term and as used in section 630, *supra*.

Webster's definition is as follows:

Navigation n. (L. *navigatio*), Act or practice of navigating.

Navigate (L. *navigatus*, past part. of *navigare*, v. t. & i.) To journey by water, to go in a vessel; to sail or manage a vessel; to use the waters as a highway for commerce or communication.

Funk & Wagnalls define "navigation" as—

1. The act of navigating or the state of being navigable; to move over water in vessels; as, at the head of *navigation*.

2. Specif.: (1) The science or art of ascertaining the position and directing the course of vessels, especially at sea, by astronomical observation and calculations; nautical science or art.

(2) The management of the sails, steering-apparatus, etc., or the working of a ship generally; move properly; *seamanship*.

No one will dispute that navigation is often essential to foreign trade, but it is a means to effect foreign trade and not the trade itself.

Frequently in the daily press we read of yachts, used solely and entirely for pleasure, being sold to nations at war or threatened with war. Would it not be a violent assumption on our part for one moment to contend that a yacht or pleasure craft of that nature sold to a foreign country for any purpose whatsoever, and fueled with oil in a port of the United States under the same or similar conditions as those in the case at bar, would be considered to be actually engaged in foreign trade so as to permit refund of the tax paid on the importation of oil used to steam her to the port of destination, granted it being a foreign port? We think and feel that this would be a very strained construction of the law, and we cannot concede it to be correct. Yet the analogy is applicable to the situation before us.

A careful perusal and review of all of the substantial facts in issue compels us to this conclusion: That the *Leviathan* was not engaged in foreign trade on her voyage to Rosyth, and for that reason the fuel oil laden aboard her is not entitled to the exemption granted in section 630, *supra*.

Judgment will therefore issue in favor of the defendant.